You may, and we will hear next on Mid-Century Insurance Company v. Werley. Good morning. May it please the Court, my name is Candace Udgar. I represent the appellate, Mid-Century Insurance Company. With the panel's permission, I'd like to request three minutes for rebuttal, please. Respectfully, the District Court got it wrong here. In an unprecedented decision, it invalidated a household vehicle exclusion where the host vehicle, or the vehicle involved in the underlying accident being occupied by the insured, was not itself insured for underinsured motorist coverage. That decision has not existed before this Werley decision in Pennsylvania. There are two divergent lines of cases when it comes to the household vehicle exclusion. You have the Gallagher-Donovan line of cases, and then you have the Eichelman-Neon. The dispositive fact between those two roads is what the host vehicle insurance coverage was. If it had UIM coverage, then you can proceed down the Gallagher Road. If it did not, as was the case here, then you proceed down the Eichelman-Neon. Well, normally it just so happens that it's been the host vehicle coverage that has had the initial payment on the secondary policy. We're in a sort of unusual situation where secondary policy provided payment on that coverage. So where do you point? I mean, it's not in the language of 1733, which just deals with priority of payouts. 1738 seems to say you just take a lump sum. So where can you point us in the statute to support your argument? Well, so I think you first begin with the policy, Your Honor, which has the exclusion itself, the household vehicle exclusion. And that exclusion, by definition, looks to the host vehicle. That exclusion is all about what coverage exists for that host vehicle. If it doesn't have UIM coverage, then coverage is excluded under this policy. That's where you begin. Then when you look at the end of the FRL, I don't believe you're just looking at one section in a vacuum here. I think that's a mistake that the district court made. Instead, I believe you're looking at 31, 33, and 38 and interpreting that in pari materia to give effect to all three. 38 has a very generic statement at the end of subsection A about what stacking is. This issue is obviously much more nuanced because we have an exclusion here that the Supreme Court has said is valid and remains valid. There is an exception to that, of course, that validity, and Gallagher is a great example of that. But the facts in Gallagher are completely dissimilar to what the facts are here. In Gallagher, Mr. Gallagher had a motorcycle. He did everything right. He purchased stacked UIM coverage for that motorcycle. Then he purchased stacked UIM coverage for his household vehicles. He's in an accident with the motorcycle. He collects the UIM coverage for that motorcycle. Then he turns around to the same insurance carrier and says, Now I want the stacked UIM coverage for my household vehicles. Geico pulls the rug out from under him and says, Nope, not so fast. We have this exclusion here. That was problematic because obviously 38 requires a signed waiver. There the insurer is manipulating the exclusion in a way that is kind of a bait and switch. We'll take your premiums, but then when you really need it, we're going to exclude the coverage. Gallagher is correct under those facts. While initially the Supreme Court came down in this very broad expanse of holding, they've clearly walked it back in the years since. Most recently in the Rush decision that came out at the beginning of this year, it was explicit. The Gallagher decision is limited to those facts. The household vehicle exclusion still has validity under the right set of circumstances. We would respectfully submit that this case is those circumstances. Unlike Mr. Gallagher, the Whirleys here had a dirt bike. It was a dirt bike that they never paid a single dollar in premium to insure for underinsured motorist coverage. It was only after that dirt bike was involved in an accident that the Whirleys then went to mid-century and wanted payment for UIM coverage. When you look at the statute, we know that UIM is not portable the same way that first party medical benefits are. 1731 and just generally UIM benefits, you purchase them for the vehicle. You don't purchase them for the person. First party benefits doesn't work like that. You buy first party benefits for yourself. So if you're involved in an accident in my car or your car, it's your first party benefits. UIM is totally different. You're involved in an accident in my car, it's going to be UIM benefits under my policy, assuming I'm not at the Apple or the Twerk user. They don't seem to be contesting the fact that the parent's policy did not port to the dirt bike. They seem to be contesting that it didn't stack once the benefits were paid under the daughter's policy. I don't think the portability is what they're challenging here. I would agree with that. The reason I bring up portability, though, is because the district court did. The correct analysis here is to look at the host vehicle and that coverage. If you do that, respectfully, the Whirlies lose. They don't get coverage. The exclusions should be upheld. Walk me through why the district court's recitation of portability led to the error that you're asserting. The district court, twice in its opinion, was explicit. It said in this quote-unquote rare scenario, UIM benefits will follow Levi Whirly and not the dirt bike. The district court's analysis was kind of wrong from the get-go. The district court, respectfully, did not understand that it should be looking at the host vehicle policy, or the lack thereof in this case, and that that should then drive the remainder of the analysis. It started off by believing it was either or. Either we look at the vehicle or we look at the insured, and we choose Levi Whirly. This unprecedented way applies 1731 so that UIM benefits under household policies for which Levi Whirly qualified as an insured would just follow him no matter the case. If he's occupying an insured dirt bike, no problem. If he's occupying a regularly used vehicle, no problem. And, of course, that's not at all how the Supreme Court has interpreted 1731. And the Supreme Court, of course, confirmed that and made it even more clear in the recent Rush decision involving a different exclusion, regular use exclusion. But these issues overlap because the analysis that the district court completed was fundamentally flawed. It said we're looking at Levi Whirly, and the U benefits will follow him. And in doing so, it was able to kind of dismiss what we see as the dispositive fact of the uninsured dirt bike. Was the statutory language really at issue here? I mean, to my mind, Donovan and Gallagher have the unusual situation where the household vehicle exclusion, if you gave it effect, it would, as the court said, be kind of a hidden method of waiver. And we require that waivers be explicit. So it seems to me you don't even need to refer to the statute. You go to the principle that only in that household policy exclusion is valid. And it's a way of avoiding unknown risks, et cetera, et cetera. And the only way it's invalidated is if it works the mischief that it did in Gallagher and Donovan. Exactly. And because the Whirlys never applied for a policy for the dirt bike, they never sought any coverage, there was never the opportunity for any sort of waiver to be submitted, considered or executed. And the district court here even went so far as to put it on mid-century and say, well, you don't have a valid waiver from the Whirlys for this dirt bike. Well, mid-century never knew about the dirt bike. And, you know, certainly insurers can't be expected, you know, to surveil their insurance and know things that are not true. In Donovan, though, there was a waiver, but it turned out to be defective. They signed a waiver, but it was held that intra would not cover inter, right? Exactly. And I think that's where issues start to become conflated a bit, because there you're talking about the policy that's applicable to the host vehicle. And here there is no policy there. This is the gap. This is the gaping hole. This is the big void that I think causes the problem. Because we know under 1733, which is a prioritization, we know that the policy for the host vehicle is not the same as a policy in the household. And the Supreme Court, going back more than 30 years, has seen this as a concern, because people who live in the same household have multiple vehicles, they'll just buy UIM coverage, which is expensive, especially if it's stacked for only one of the vehicles, even if there's, like, 10 other vehicles in the household. And so they won't purchase it for more expensive vehicles, like motorcycles, very expensive to insure, of course, because they're higher risk. And when they're involved in an accident and people want to go back and get UIM coverage over here, this hypothesis or this scenario has come up in multiple Supreme Court decisions, going back to Windrum back in 1994, where you had a motorcycle that wasn't insured at all, just like the dirt bike here. So it's a problem. If your reading is right, why would there be a payout at all on a secondary policy? Because it's a different exclusion. The exclusion was written differently. So the Whirlies had two policies in their household. This other policy wasn't even a month old. So because policies were written at different times, the exclusions were worded differently. This policy that was only a month old was written so that the household vehicle exclusion was limited to only cars. And the way the car was defined in that policy, it didn't include a dirt bike. And, you know, that's our mistake. Mid-century risk policy, we have no one to blame. It's our problem. It's our oversight. And we paid it. And we don't, obviously, begrudge that. But then the question becomes, well, if that policy doesn't have an exclusion or doesn't have an exclusion that applies, does that mean that this policy over here with an exclusion that clearly does, does that mean that that just becomes invalidated when underneath it all you have an uninsured vehicle? But isn't the premise for payment and not applying the exclusion that there was a premium paid for that scope, albeit an unusually broad scope, of uninsured motorist coverage, even without it resting on a vehicle? Sure. So that question becomes, what was that premium paid for? So we purchased UIM benefits for the vehicle. That was purchased for vehicles not involved in the accident. Now, by being a resident relative, you qualify as insured and would get additional coverage at that second priority. But here at the first priority, there's nothing. And, again, when you look at the way the Supreme Court has interpreted the household vehicle exclusion throughout the years, time and again, and even in Mione, they go back to this premise that that's troubling. We do not want people to be able to, after the fact, go back to their household and kind of retroactively seek UIM coverage for vehicles that they otherwise had no insurance for. But isn't the premise of that that there wasn't payment, there wasn't a fair exchange? If you paid for the premium that would cover the uninsured motorist coverage for a vehicle, that's where you might start to have the uninsured motorist coverage, period. And then we've got the waiver issues that would follow. But given the way this particular policy was written, why shouldn't we understand that the premium that was charged in this case was for the person, not the vehicle, and it provided the uninsured motorist coverage for Levi so that the waiver of stacking, the same concern, the public policy concerns about imposing a waiver for policies that follow would come into play, that the household exclusion for other policies preventing stacking would be against public policy? Because you're effectively reconstructing the way UIM coverage is structured, not simply under the household vehicle exclusion of this other policy, but in how we know portability is to be interpreted under 31 and how the hierarchy of the policies is to happen in 33. But are we doing that, or did your client do that in the way they wrote this particular exclusion? And I just want to be clear, the policy exclusion you're referring to is the policy that was paid. Right, exactly. Yes, I mean, again, we paid because the exclusion was not written in a broad enough sense to apply to the facts of this accident. And that is not really an issue. Did we pay or should we pay? We concluded, ultimately, that the coverage was owed, so we did. But the question, though, becomes can a household policy effectively relieve an insured from this glaring omission of insuring the host vehicle that is involved in the accident? I mean, that's the genesis or the nucleus of the whole claim is the accident itself and what vehicle was involved. From there, it can go to different layers of coverage. But just because they have the good fortune of a household policy that maybe wasn't written as expansive as it should have been, does that mean that they then get a windfall to go to other household policies? I mean, if that is the case, and I think you are risking the incentivizing of uninsured vehicles on the roadway where people will only be selective about which vehicles in their household they insure, or if they have residents that do have UIM coverage, they won't insure their own because they live with them. That's where I think potentially you pull that thread. I think it starts to all come undone. Is this case sui generis just because of the unusual way this exclusion was written? I didn't catch that. Is it generous or? Is it a unique case? Is it a one-off case? So the district court, in my opinion, throughout its opinion, used the terms unique, rare. I think it was very much trying to limit what it did in this case. But we know that since this has been decided in the Eastern District, it's been cited too, because the way that it interpreted not just the household vehicle exclusion, but then also the different sections, 31, 33, 38, and then the Supreme Court precedent of Gallagher and Millon, it creates, I think, issues. Because it is very possible that there will be other policies. Nowhere in the NDFRL does this language of some other policy first exist. That's phrasing that was cherry-picked from the Millon decision. And the district court then kind of jumped on and said, okay, well, we just have some policy. I guess that's good enough. And I would respectfully submit that that was looking at it in a vacuum. When you step back and you look at the policy language, you look at the statute, and you look at the case law, that isn't good enough. Because we know household policy is not the same as the host vehicle policy. But I assume that the household vehicle exclusion of the policy that was paid was not as broad as it should have been. It should have excluded more. Yes. And I'm assuming that it no longer reads that way. And not many other policies read that way. So that it is a bit unique that that actually got to have money paid out of that. I mean, potentially. For whatever reason, these carriers do write different endorsements with different exclusions that are worded differently. Because the household vehicle exclusion is not in the NDFRL. So there is not just one way you can write it. And so these carriers do have modifications. So I can't necessarily say that this is, you know, the only time that this has happened. Potentially it could happen more. You know, you could have different carriers in the same household certainly using their own language. And I guess that so, you know, I'm coming back to, if a carrier is making a decision about what language it uses, about the scope of the exclusion, it's in a position to set the premium for the risk that it's taking on. If it chooses to take on broader uninsured motorist coverage, you know, as a result of the way it's written its policy, then why aren't we just back to 1738 where we're talking about the just lump sum of putting together uninsured motorist coverage? And it's against public policy to impose, you know, a waiver of the rights that are provided under the statute. Because you're nullifying not just 33 in the hierarchy, but you're also nullifying Neone where the Supreme Court has made clear that the coverage for the host vehicle has to be there for coverage beyond that to stack. So there's intra- and inter-policy stacking. But when you have inter-policy stacking, you also have different priorities of stacking that occur. And so it's our position, respectfully, that just because you have a different policy at the household level, you have not cured that fundamental defect that exists with the host vehicle. Is the mandate even of Neone really that it must be on the host vehicle? Or is it that it must be the stacking will come into play only where there is, you know, has fairly been a premium paid for the provision of uninsured motorist coverage at some point, and then stacking will follow from that? I believe that they were talking about the host vehicle coverage because that was the set of facts before then. I don't believe that in the few times that they used sort of more generic language about in the first instance or some other policy, that they were maybe necessarily envisioning this scenario where they were going to give someone a pass, not just for having an uninsured vehicle. But then, like I said, the Whirleys benefited from our mistake in the one policy. And good for them. I mean, there's nothing that we begrudge them for that. But the question becomes, do they then get a windfall for another policy that did have an exclusion when that critical error exists of that dirt bike not having any UIM coverage? So I can't speak for the Supreme Court, but I know the facts that were before them in Neone. And when they talk about this other policy, they're doing it in the context of two paragraphs where they're also talking about this concern that they have, where insureds will not purchase UIM coverage for all their vehicles they actually want that coverage for, and instead will only do it selectively. And then after the accident, try and go back and get much broader UIM coverage, if that makes sense. All right. We'll hear from you again. Thank you. Mr. Schuchman? Good morning, Your Honor. Yeah, Peter Schuchman. Pardon me. I'm here privileged to represent the Whirley family. And I am grateful for the opportunity to speak on their behalf and start with the issue of the good fortune this young man suffered near fatal injuries from which he has recovered largely with permanent deficits. So to say good fortune, let's remember that what this court does affects real people in its decision making. We never forget. I know you wouldn't. And I hope everybody in this room understands that. So may it please the court, each of you has read very good opinions written by district court trial-level judges. This is an exceptionally good opinion written by Judge Smith, who the bench and the world has lost. This is perhaps the most thorough, capable exposition on underinsured motorist coverage and stacking issues that certainly I have seen and perhaps this court has seen. How can you, under what theory are you invalidating the household policy exclusion here? It's not a Donovan situation or a Gallagher situation. So how, where is there kind of wiggle room with respect to the invalidation? You'll agree these household policy exclusions are generally appropriate. And they're in lots of policies. And it's only in a Donovan and Gallagher situation that the Pennsylvania Supreme Court has held they are invalid. So I'm wondering how you can reason through to invalidate them in this situation. With respect, Your Honor, this is a Donovan case, a Gallagher case. Because, and it is, if it's not rare, if it's not unique, it's a very rare case. But we have two policies in the household. And there was payment made under the other policy, the policy covering the sister and the father. And the subject policy, which is the multi-vehicle policy for which there was a defective inter-policy stacking waiver executed, makes this squarely within Donovan. And what winds up happening in that situation then is the coverage that Levi had the good fortune to receive under one of the policies that his parents paid for is the policy that we're seeking to stack upon. I did notice one of the first questions that was asked was, where in the statute does it require coverage on the host vehicle? She never answered your question, Your Honor. She went to the policy, which, if it has a provision that is a household vehicle exclusion, that is going to be invalidated under Gallagher and Donovan. And so I don't think that it's as widely accepted and widely permissible under situations like this where there's been coverage paid. But the answer to the question, I will answer it. It does not say anywhere in the MVFRL that there must be coverage on the host vehicle. But if you read Donovan and Gallagher, it's clear that the logic flows from the fact that he had had his motorcycle insured and he had paid for UIM on that motorcycle. So, therefore, to exclude that motorcycle later was the de facto waiver. So the statute may not say it, but if we're limited to the facts of Donovan and Gallagher, we don't have those facts here. There was no insurance at all on the dirt bike. And do we not believe that the premiums would have been much larger if there had been insurance on the dirt bike and the UIM that's stacked on the dirt bike? Because a lot of the reasoning in Donovan and Gallagher is you get what you pay for. And here it would be kind of eureka because the whole text of the household policy exclusion in the first policy was certainly not the focus of anyone's attention when you're paying for premiums. It's the fact that somehow that dirt bike could slot in there. So the reasoning of Donovan and Gallagher is as much you get what you pay for as it is you have coverage here. Can you explain how here it makes sense? Certainly. And how it's not abusive as the courts have been concerned? Yes. You know what I mean? A number of different points. You get what you pay for. We're seeking coverage, the underinsured motorist coverage under the subject policy for which there was that defective waiver. What they're attempting to do is to avoid paying for that coverage that they paid for based upon, solely based upon the existence of the household vehicle exclusion. The key distinction between this case and Eichelman and I call it my own because there's language in there that's critical in this case and dispositive and fatal to their case, my own case, is that this vehicle was not required to be insured. In all of the other cases that the facts concern motorcycles, ironically enough, there was a knowing, intelligent, signed waiver mandated by Section 1731. That doesn't exist here. And they're going to say, well, that's the fault of the folks whose kids have a dirt bike rather than on the insurance company. But what is mandated by the statute, set aside policy considerations or whether or not it's cost containment or, as is binding on this court, the remedial purposes of the statute, it is the idea that there must be signed waivers in order to knowingly and intelligently waive coverage under that circumstance. That's not our case. There was no requirement because it was operated only off-road. All of the people who were saving money, pinching pennies, so to speak, and giving up rights signed the mandated form. We don't have that here. And they want to create what's called an implicit waiver by not buying coverage for the dirt bike that you never had a requirement to buy coverage for. And the undisputed facts in this case are that they didn't even know that they could buy coverage for it. I'm not following why, whether it had to be insured or not, why that enters into the consideration here. Or what they knew or didn't know. How is that relevant? The lack of insurance on the host vehicle that was critical to Eichelman and my own was because there was a knowing, intelligent, signed waiver in the form mandated by Section 1731. That doesn't exist here. But are you saying they couldn't have insured the dirt bike? The record, they learned after this happened that that kind of coverage even exists. Because there's no requirement, they never bought it because it was only operated off road. Why does their subjective knowledge matter? Well, I don't know that it does, Your Honor. But the fact that it was not required to be purchased is an important distinction, and I think really controlling here. But it sounds like you never had any expectation that there was any coverage, much less UIM, on the dirt bike. Well, and the fact of coverage or non-coverage on the dirt bike, candidly, is irrelevant in this case because... But my question was what their expectation was. I'm sorry, Your Honor. It sounds like their expectation was never that it had any insurance on it, much less UIM or UM. I'm sure that they did not anticipate there was any insurance on it, but there was no looking to the dirt bike. Obviously, all this is done through their lawyers. But Gallagher and Donovan, the parties had purchased and did have an expectation that the host vehicles had UIM on it. Whether or not, leaving aside the stacking, just the host vehicle, they did have an expectation there was UIM for those host vehicles, and there's no expectation here. I must disagree on this basis, Your Honor, that they didn't buy any insurance on the dirt bike, so they wouldn't necessarily expect there to be any coverage arising out of the operation or use of the dirt bike. They did buy coverage under the vehicles in the household. There was the other policy that they paid on that we're attempting to obtain the coverage under the subject policy and stack it onto the other policy, and that's the critical factor in all this case. It's much more straightforward than mid-century wants it to be. There was a policy paid. We are seeking to stack on that other payment, and that's where my own, the language is critical. Under some other policy first is italicized language in my own that by its contents, there's some dicta in there about we don't want to create mischief and let people do all these things. But what the court does, it says, we understand the plain language of Section 1738 says what it says. We don't even need to get into policy issues. It says that where there is this coverage, where there's an insured under the policy, I could read it, and we will stand on our brief, but the amount of money that shall be paid is the total of the vehicles for which the claimant is an insured. I have that messed up, but the idea is Levi was an insured resident relative under the other policy. He got paid. So what do you do with Rush and the fact that we've been counseled that this is a narrow situation? Don't you think that if we were to decide and affirm the district court that we'd be wreaking a little bit of havoc under Pennsylvania case law? Respectfully, Your Honor, no. I think these facts are narrow. Rush says that it was narrow, but the Mayon case, Rush cited to Mayon and restated the same language that I just cited to you that for, I do want to get this right, for a household vehicle exclusion to be acting as an impermissible de facto waiver of stacking, the insured must have received UMUIM coverage under some other policy first, or else Section 1738 is not implicated at all. They paid under the other policy, so 1738 is implicated, and the plain language of the statute is what it is. Rush, Your Honor. Isn't it implicit that under that first policy that it doesn't just get UIM coverage in a vacuum. It gets it because you've insured that vehicle under that policy. Isn't that implicit? Well, you've insured. Here, the payment of UIM coverage under the first policy is pretty much backdoor, unanticipated, unexpected. It's not your standard situation. I don't know that it is or isn't, Your Honor, because UIM coverage by its very nature contemplates a whole lot of different scenarios. He may not have been occupying the dirt bike, for instance. He could have been walking down the street. Anything could have happened, and the UIM coverage is implicated under the other policy because the exclusion was less broad than the subject policy. They paid. Is it implicit in your argument that there was a premium paid commensurate with the more limited scope of the exclusion? In other words, are you necessarily arguing that because we're dealing with the other side of the public policy issue is the cost containment, right, for insurers and containment of their risk, that for there to be payment as there was under the other policy here, that the premium paid for uninsured motorist coverage under that policy took account of the broader scope of uninsured motorist coverage? It probably did. The actuaries figure that sort of thing out, and they paid a premium under the subject policy as well for whatever may come. Under the subject policy, it's a broader exclusion, and they may have priced it differently, but there were also four vehicles on it, and they got a stacking waiver that was defective. But again, I submit that the cost containment issues or even the remedial issues are irrelevant when we look at 1738 by its plain language. Under my own, the court said we look at the plain language, so stacking isn't even implicated. Under my own, it says when an insured seeks UM or UIM benefits under a household policy but does not have UM UIM coverage on the vehicle that he was occupying at the time of the collision, it cannot be said that a household vehicle exclusion is operating as the sort of disguised waiver of stacking disapproved in Gallagher. I mean, how does that not apply to a dirt bike, which is a vehicle that he was occupying at the time of the collision that does not have UIM coverage? Your Honor, it doesn't apply here because in my own and Eichelman and all the other cases that surround it, there was the knowing intelligent waiver of coverage. They knew what, under 1731, you know what's available to you, and in order to not have it by default, you must sign the mandated form. There's no mandated form here, and that's the essential difference. But my own, again, that addressed those particular facts of my own. There was no coverage on the host vehicle because he had signed the mandated waiver. The issue there was they were seeking coverage in the first instance under the two household policies that had the household vehicle exclusion. And so the court said, if you don't have it on the host vehicle in this instance, you can't get it in the first instance from this crash. In our case, we got it already, and so if the court were to- But not on the host vehicle. Not on the host vehicle. But again, I go back to the language of 1738, 1733, and everywhere else in the MVFRL. There is no requirement for there to be coverage on the host vehicle, and my own's facts are distinguishable from our facts. And most importantly, if this court were to reverse, it would create that mischief because the stacking is available. We're seeking to stack because there was money paid under another policy first. There is something to stack upon, whereas in my own, there was not. So Judge Smith, in a very comprehensive, very good opinion, he got it right. We're asking this court to affirm. So I want to make sure I'm understanding your argument. You take the position that you can get uninsured motorist coverage any number of ways, as long as it's in a policy and you haven't waived it validly. You can get uninsured motorist coverage by attaching it to an underlying vehicle, and you can also get uninsured motorist coverage by including it in a multi-vehicle policy that may not cover- that uninsured motorist coverage would still apply to the individuals in the household. To a point, I'm saying that, but what the emphasis is here is it's about the stacking. But you need to get uninsured motorist coverage first. Correct. And your argument is that you can get that uninsured motorist coverage either by attaching it to the vehicle in the first instance or you can get it by attaching it to the person by way of a very narrow exclusion. I think it's the way that insured is defined under the Act and in the policy. So if they had bought UIM coverage for the dirt bike, and it's undisputed that they did elect UIM coverage in the two policies that are at issue here. If they had, that's one way to get UIM. But the scheme exists for there to be stacked coverage where you get coverage as an insured for vehicles that are not involved in the crash. And that's the second priority where we are here. We were paid under one policy of the priority. We're seeking to be stacked on that with the other policy in the same priority. There's nothing in the statute that says there has to be something first priority before you can stack these two. So it's really a stacking issue for us. And I do understand your reliance on the statutory text. I guess my, and I understand that when you're talking about the specific sentence that discusses stacking, it does reflect a use of the word or the words uninsured. I guess I'm just wondering, that reading seems to be in isolation of the preceding sentence, which discusses motor vehicles that are covered by UIM or UM. And then the sentence you're discussing then discusses the stacking. So the first sentence explains how a covered vehicle, the limitations of each of those policies apply to each covered vehicle. And then the next sentence discusses, you know, it could be to your point, it's just any vehicle in the ether that someone isn't insured for, or if read in conjunction with the previous sentence, it means any person who's uninsured as to a motor vehicle in conjunction with the preceding sentence that has UIM or UM. And so what, can you point to any case law which reflects an intent that they not be read together and that they should be isolated? Because it does seem to be that there is a through line in the cases, you know, the Gallagher-Donovan versus Mion-Rush, or maybe I should say Eichelman and Mion, is whether or not there is UIM on the host vehicle. And the language in Mion that I had read to you seems to reflect a reading of the two sentences together rather than in isolation. So do you have any cases where they are isolated or it says we should read these in isolation? Well, Your Honor, I think you do need to read all of the statute in paria materia, and I don't have a case that speaks to your point other than really the Gallagher and Donovan, which talk about the time that if you are destroying the ability to stack by virtue of the household vehicle exclusion, that's impermissible. And so when you read it all together, if they hadn't paid under the other policy, we would only be talking about the issue of the knowing and intelligent waiver. But it's very straightforward. Because they paid under the other policy, we're looking to stack, and that's how I think you need to read it together in that Gallagher and Donovan. Donovan was not touched by Rush. It has not been disturbed. And it's really on point with what we're discussing here, that because he is entitled to stacking, and in this situation it's only because of the household vehicle exclusion that there would not be stacking, that's what makes it impermissible. And that's why we should win, and we're asking you to affirm. You're, in so many words, you're asking us to treat the first level policy not as the host vehicle policy, but as, in this case, the other insurance policy. The other insurance, there is no priority or hierarchy here in my view, Your Honor. The fact that there was payment received under some other policy first is what creates the opportunity for stacking. That's what prompts the discussion. Is this even a 1738 case? Is this a stacking case? In my own, there was nothing to stack upon because they were looking for coverage in the first instance. If this court were to reverse, it leaves hanging out there the fact that there was payment in the first instance and has prevented the stacking that is otherwise clearly available under Donovan. Is this a widespread problem? I can't imagine that it is, Your Honor. The idea of the dirt bike is unique. As you pointed out, it could be someone walking down the street, right? That is true. Somebody could be walking down the street, though I can't imagine that any court, whether it's the Pennsylvania Supreme Court or even the legislature, would let an insurance company exclude a pedestrian. Well, if it's on the street, it's required to be insured, whereas the dirt bike is not on the street. Yes, perhaps I misunderstood the question, but depending on where the vehicle is, that could be an issue. But the idea of it being a widespread problem, you can have a million different scenarios where there is no coverage on a host vehicle. I could be driving the three of us down to the stadium, and we're going to watch the ball game, and you can collect as passengers in my vehicle for the underinsured motorist coverage, and then you could look to your own policies, and you may have the ability to stack under those. What they're kind of suggesting here, what if I didn't have UIM coverage for you as the host vehicle? That, I think, would be a more widespread mischievous situation where they are inventing a requirement under the statute that there be coverage under the host vehicle. It's not in there, and so you would be deprived of your right to stack under your policies because there's no coverage on the host vehicle. That is simply not the case. We would have to say and predict, the Pennsylvania Supreme Court would say, it really doesn't matter that there was no coverage for the vehicle. No, the vehicle wasn't insured under the first policy. It really didn't matter. So that was the situation in Gallagher and Donovan, but it really doesn't matter. As long as somehow there's UIM coverage, whether or not that vehicle was insured, we can invalidate the exclusion. Yes, and in fact, under Gallagher and Donovan, you must because... No, under Gallagher and Donovan, we would, but we would be saying, ah-ha, we predict that the Pennsylvania Supreme Court would say that it really doesn't matter that the dirt bike wasn't insured at all. The only thing necessary is that there was UIM under that first policy. That's all we need to look to, and we'd have to predict that the Pennsylvania Supreme Court would say that. I'd say under the facts of this case, and frankly, they've already said that, they've said that under Gallagher and Donovan, you have stacking by default, and under my own, for a household vehicle exclusion to act as an impermissible de facto waiver of stacking, the insured must have received UMUIM coverage under some other policy first. They've already said it. We would be adding comma whether or not the vehicle was actually covered under that insurance. That's what we'd have to add. You can add that if you want to, but really, I think the case is even easier because in this instance, there was payment under some other policy first. The Pennsylvania Supreme Court has already answered that question for you. Can you walk us through this same situation? Let's take the person walking down the street. Yes. They're hit by a vehicle that doesn't have any insurance at all. They turn to their own vehicle's policy and say the policy is written in such a way that it doesn't exclude them as a household member. Your position is as long as there's some payment under policy, then under 1738, stacking follows. Yes, Your Honor, and in this instance, you do have to look to the language of the policy because if there's an exclusion, and it's a stacking issue, so I think you need multiple policies in the household to fulfill your hypothetical. If one policy had an exclusion for not occupying a vehicle that had UIM insurance, for being a pedestrian, how can you get UIM coverage in that instance? I'm not sure that you can, and that would clearly result in a waiver of stacking without the required mandated waiver of stacking, and that mandated waiver of coverage in the first instance that was central to my argument. But household exclusions only apply to cars owned by you, so if you're the pedestrian, the household exclusion wouldn't apply anyway. Well, I agree with you. I can't envision a scenario where that would pass public policy that you couldn't get UIM coverage as a pedestrian. I do understand where the court has said the household vehicle exclusion is not blanket invalidated, but it's not always permissible. And this is a rare situation, if not a unique one. There was payment under another policy, so I ask the court to stick with the idea that stacking is permissible, it's required, and the cases that they rely upon, MidCentury relies upon to deny benefits, all involve a distinguishable set of facts, and that was a knowing and intelligent waiver of coverage so that they could be operating their vehicle on the streets. There was no requirement to cover this thing. A 15-year-old kid was riding his dirt bike and he got run over, and we are asking for payment, we're not asking for coverage on the dirt bike. We're asking for payment under the subject policy that they paid to insure, they collected their premiums for, they priced however they priced it, but we're not asking for something for nothing. We're asking for something for something, and that is full compensation for this young man. So, in other words, you take the dirt bike out of the equation, it's the same, your argument would be exactly the same if he had been walking down the street. If you take the dirt bike out of the equation, they don't have any exclusion at all to hang their hats on, and we never would have met. Well, what if he were driving one of their uninsured off-road Jeeps? Wouldn't it be the case that the neither policy would apply, because that would be both a car and a motor vehicle? That's probably right, Your Honor, but that's not our case. Not your case. Thank you, Your Honor. Please refer. Just briefly, two areas to touch upon. I want to caution against changing material facts too much. I believe that is an error the district court made, specifically in footnote 38. It kind of went down this rabbit hole of talking about what if he rides on a dirt bike, a skateboard, what if he's walking down the street. That's your materially changing facts that would not implicate this exclusion. And in those scenarios, you don't have the sort of unfairness or injustice of the insured occupying a vehicle that's theirs that they have chosen not to insure for UIM coverage. And that's really the rub here. Under your theory, how did those scenarios actually play out? They're completely in a posit, because you're not occupying a vehicle that you own, so the household vehicle exclusion isn't implicated. So you would go, if you're just walking down the street and you're hit by a car, well, they would be the tortfeasor, so you would be collecting their BI coverage, and then you would go to your policy as a UIM. But you're not occupying a vehicle, so there's not this injustice of no first priority coverage existing that you haven't purchased or elected. And I think that's really when my opposing counsel talks about this need for a signed waiver. Let's not lose sight of the fact that that's a problem the Worleys created, right? They want to benefit from a problem of their own creation. If they had actually talked to a carrier and applied for coverage, the opportunity would have presented itself for some sort of waiver to be executed. Midsentry had no idea this dirt bike even existed, let alone was being used by a 15-year-old in what's arguably a very high-risk, dangerous setting. And it only became aware of that fact after the fact. And that's really in most coverage cases or really any motor vehicle accident case, someone's in an accident and suddenly that coverage that they talk to their agent about isn't so hypothetical, right? That $100 they saved for limited tort doesn't really seem worth it anymore. So I think there's a little bit of that here, that we all have that maybe buyer's remorse when we don't understand these decisions we make. Now, here the decision was implicit. They just decided not to get coverage altogether. But to penalize... In Donovan, I think it was Donovan, in one of these cases, the court said that insurers can mitigate this risk by requiring their insurance to list all of the uninsured vehicles. Was that done in this case? Was there anything done to address the idea of unknown uninsured household vehicles? Well, we have the policy that was written just a month before this accident. But it was post-Gallagher. Yes, in June of 2019. Yes, this would have been post-Gallagher at that point. The dirt bike was not identified in any of the application documents. Did the applications ask for all uninsured household vehicles or cars to be identified? Sure. I'm paraphrasing. So this is not exact. But there is a question in the application that does say, are there any other vehicles other than the one you've identified for which you're seeking UIM coverage, or for which you're seeking coverage under this policy? And Chad really answered no. It's a single vehicle policy. This is the only one.  You're buying it for the vehicle. You're not buying it for the person. And so to take 1738A, that last part, and say, no, wait, it is for the person, that's just not consistent. And where in the record is that that you were just discussing, the application? Oh, absolutely. I would have to look. If I could have a moment, I'd be happy to cite it. Oh, I'm sure I can find it. Yeah, it is in the appendix. You could send us a supplemental letter to that. Will do. Can you read 1738A as requiring that the vehicle be an insured vehicle? The host vehicle? Yeah. I mean, it talks about each vehicle so insured. Yes. I mean, for opposing counsel's argument to be correct, that's not necessary. All there has to be is uninsured motorist coverage under one, and then you automatically can stack up. But if 1738 starts on the premise that vehicle so insured means vehicle needs to be insured, that would knock out that argument. Right. I think that's the mistake. If you look at 1738A in a vacuum, that's sort of the mistake that was made in Rush when they were looking at 1731,  and it doesn't, in 31, say anything about regular use. Same thing for 38. The host vehicle isn't specifically called out. And that's why I was saying the household vehicle exclusion, admittedly, it's not in the MVFRL, but it is in our policy, and the Supreme Court has said this is a permissible exclusion under the right set of facts. So that's sort of why we have to get back to the facts here and why when you start changing them, it can kind of go down these rabbit holes that just maybe muddy the waters unnecessarily. So one source for your reading of the statute is I think your position is reading all of the MVFRL together. Another might have been what I suggested, if you read the first and second sentence together. Yes. But I guess I'm – where exactly are you identifying the source of why it should require UIM or UM on the host vehicle as opposed to just, you know, in the first instance, and ensure it received it? So if you read the second sentence in isolation, that's reasonable reading. Oh, sure. And I think it would be a mistake just as it was in Rush to read 31 in isolation. What is the source for reading the host vehicle into that sentence? So the host vehicle, as I said, it's not in the MVFRL. You can read it all day. You won't see a host vehicle exclusion in there. Right, I understand that. Sure. But I'm just asking, where can you point to that we can reasonably interpret reading that second sentence together would lead us to the conclusion that it requires UIM on the host vehicle? So if you read 38 with 33, that has the hierarchy of policy, which is what the household vehicle exclusion really bolsters. It's reinforcing the idea that the host vehicle, that first priority, has to have coverage there before you get to go to a second priority. And we know the Supreme Court would agree with that because they've hypothesized if you don't interpret it that way, then you will be opening the door for people to only selectively ensure certain vehicles in their household for UIM coverage, and then later on coming back for other vehicles, like what's being done here, and wanting that UIM coverage for an accident involving that vehicle. Wouldn't it also be that if that first policy, let's say it had a Ford, a Chevrolet, and a Cadillac, and the accident involves a dirt bike, so then you go and you say, okay, we want the motor vehicle exclusion, household exclusion, to apply. Well, the real mischief is if one of those three vehicles that's insured is the one you're excluding. That's where it makes sense to say it doesn't work. We got coverage on here, so you can't throw it out because we didn't waiver on this vehicle. But when it's the dirt bike, and you say, okay, exclusion involves the dirt bike, you're like, okay, it kind of doesn't make sense, does it? It's my own sense and not yours. So when you buy a policy for those three vehicles, you're deciding, do I want UIM coverage for those three vehicles? Right. And presuming in that scenario, you're saying, yeah, I do, so you're not signing a waiver, right? Let's even say you have stacked UIM. And you're paying for it. Yeah. You're paying for it. So now these vehicles, that's what I paid my premium for. I'm insuring UIM for these three vehicles. But then let's say I have a vehicle I haven't told you about. Right. And it's a high-risk vehicle, like a dirt bike or a motorcycle, and it's really expensive to purchase UIM coverage for those vehicles. Then I'm insured while using and occupying that vehicle. That exclusion should be operative. Exactly. But it shouldn't be operative if it's one of the three that you paid for. Right, because you've allotted it. It wouldn't be applicable. That's the scenario where it's like, wait a minute, that doesn't work. Yeah. I think it's like, is there a bait and switch? That's what I think Gallagher was about. Isn't it different if the first-level policy that we're thinking about, when you have the policy on each of three vehicles, but on one of those policies, instead of having a household exclusion that would cover someone who was injured in an uninsured vehicle, you decide that you're going to offer, you know, uninsured motorist coverage on the Ford vehicle, and it's written in a way so as not to exclude a member of the household who's injured in an uninsured vehicle. If the policy is written that way, then you have a policy, right, under the terms of 1738, you have a policy that provides uninsured motorist coverage, and you have 1738 saying that the limits of coverage for an insured are the sum of the limits for each motor vehicle to which an injured person isn't insured. So as long as you have one policy that provides uninsured motorist coverage for a member of the household who is injured, why doesn't 1738, you know, stacking come into play? And unless there's going to be an explicit waiver of the other policies, that the other policies would come on top of that first policy as the first level policy. Why does it have to attach to the vehicle rather than to the vehicle involved in the accident rather than attaching initially to the vehicle under which the uninsured motorist coverage for that family member? Sure. And that's where I think the district court kind of got hung up, too. You're starting to see UIM coverage as being based upon the person, less so upon the vehicle, and you're finding the fact of the vehicle's involvement in an accident to be irrelevant, that there can be just any policy, then, that can be switched into it. There still has to be coverage of a vehicle, but if someone's paid for and the insurance company has provided coverage that reaches a household member injured in an uninsured vehicle, why doesn't that function as the first policy, the first level policy? Well, we know under 1733 they're not the same priority. That's not the language of our exclusion, and we know that the way the Supreme Court has interpreted the exclusion, I would effectively submit they would not agree with that analysis. 1733 is just the priority of payout. It doesn't deal with stacking at all, right? No, but it does give us guidance, and we do have to read these three sections together, so we know that a policy isn't a policy isn't a policy. I mean, if 33 didn't exist, that argument would be much stronger. But 33 is just the order of payout. Right, which is the legislature saying a host vehicle policy is different from a household policy, and we know that the Supreme Court agrees with that and how it's interpreted to household vehicle exclusion. These are not homogenous substitutes. They're not one and the same. It's sort of like the cart before the horse, but here you're saying, well, I have another cart. Isn't that good enough to get a second cart? You still don't have the horse. Okay, so the plain language of 1733 says where multiple policies apply. So in this situation, we have the daughter and the parent's policy. I understand you're reading 1733 and 1738 together to mean multiple policies do not apply because only the daughter's policy covers him as a secondary beneficiary, and multiple policies do not apply because the parent's policy does not port to. Right, it doesn't cure the fact this host vehicle is still uninsured. So does it turn on, and I'm just trying to really understand your argument, does it turn on not the one and two, the actual priorities, but the fact that the policies have to apply, and it's the contractual language that determines that? Yeah, it's all three. You have our policy, you have the statute, and you have the way that the courts have interpreted the policy and the statute. And I think when you look at those in the totality, especially with Mion, especially with Rush, where the Superior Court made the mistake in Rush in invalidating exclusion because they were hyper-focused on 31 and didn't step back and look at the greater problems that interpretation was creating. I think this is analogous to that. If you become so hyper-focused on 38, like I said, it's kind of a thread you start pulling. It kind of starts unraveling, and you're kind of rewriting UIM, which is suddenly now about the person, not the vehicle. It doesn't matter what the host vehicle was insured or not insured for. It's kind of throwing everything into chaos, respectively. Does our ruling have any consequence beyond this individual case? In how it's interpreting the sections and whether or not that host vehicle matters or if it can simply be disregarded and replaced with another superfluous or hassle policy, I think it will have implications. I definitely believe it does. If it does, and we've taken up a lot of both counsels' time trying to make sense of the way these provisions work together, is this something we should consider certifying to the state Supreme Court? I think that could definitely be appropriate, because I think only the Supreme Court can know what it meant in Mion when it sort of used some of these more generic phrases of some other policy first or in the first instance. I believe, in my interpretation, that it would be reasonable to conclude it clearly meant the first priority. They're talking about the host vehicle, because those are the facts before it, and it's explicit in other parts of its opinion that they're talking about the host vehicle. We wouldn't even consider certifying something that was a one-off, unique case. Can you articulate, if you think this is appropriate for certification, why? What is the broader importance beyond an individual case? I think this particular factual setting could arise again if you have households with multiple household policies. You have people selectively insuring their vehicles, not insuring all of their vehicles for UIM coverage, and then later coming back and, like I said, say you have three different carriers with three different policies. If one carrier does not have either the household vehicle exclusion, or it's not written in a way that clearly excludes coverage, does that mean these other two are now on the hook? Does that mean the household vehicle exclusion isn't validated? I don't think, under Gallagher and the concerns there, that's the case. I think what was the problem was that you have this uninsured host vehicle, and that was the concern. It would seem there would be lots of opportunities for something on wheels that would slip through an exclusion and get uninsured motorist coverage like this dirt bike did, and that's all you really need. Every case has its own set of facts, but there's a broader principle here in how you're interpreting the statutes and the exclusion. That will have ramifications. If I may, just briefly, out of turn, Mr. Schuchman, what is your position on whether this should be certified to the state Supreme Court? Thank you, Your Honor. I believe that the court has already answered these questions. The italicized language on my own is pretty much on all fours with what we're talking about here, that there was coverage in the first instance, which is italicized language, and what we have then is a situation where there was another policy in the household that coverage applied. The issue over the uninsured dirt bike, similarly, is a unique fact, and I think that this court is well positioned to reach a ruling based upon the instruction from the Supreme Court we've received already on the stacking issues. This isn't rush. This isn't regular use or anything else. These are stacking issues that the court has spoken on multiple times, including under my own, that I think governs here. I don't see certification being a necessary or even appropriate road. Okay. Ms. Edgar, I didn't mean to cut off if you just want to very briefly close. No, I appreciate Kyle's time. You certainly understand the issues and their nuance and the statutes and decisions involved. So we would just respectfully request a reversal of what the district court did. Thank you so much. All right. We thank both counsel for their excellent arguments this morning. It's been very helpful. And we will take this case under advisory.